CHRISTOPHER CELENTINO (SBN 131688)
chris.celentino@dinsmore.com
IAN G. SCHULER (SBN 275052)
ian.schuler@dinsmore.com
AUDREY M. WOOD (SBN 318838)
audrey.wood@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Ph: (619) 400-0500
Fx: (619) 400-0501

Attorneys for Defendant
BMW OF NORTH AMERICA, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SMOTHERS, an individual,<br><br>             Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; and DOES 1 to 10, inclusive,<br><br>             Defendants. | Case No.: 3:18-CV-01391-CAB-AGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION AND MOTION FOR SUMMARY JUDGMENT BY DEFENDANT BMW OF NORTH AMERICA, LLC**<br><br>*[Filed Concurrently with Notice of Motion and Motion for Summary Judgment; Declaration of Ian G. Schuler and Exhibits thereto; and [Proposed] Order]*<br><br>**DATE**: [35 days from filing date]<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**<br><br>District Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge:  Hon. Clinton E. Averitte |

Case No.: 3:18-cv-01391-CAB-AGS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION AND MOTION FOR
SUMMARY JUDGMENT BY DEFENDANT BMW OF NORTH AMERICA, LLC

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................6

II.  THE MATERIAL FACTS ......................................................................7

III.  SUMMARY JUDGMENT STANDARD ....................................................10

IV.  ARGUMENT AND AUTHORITIES ........................................................10

    A.  Plaintiff's causes of action are time barred because he suspected facts underlying the elements of his claims—the alleged oil consumption defect—more than four years before filing the action. ........................10

        1.  The California "discovery rule." ................................................11

        2.  Plaintiff's Song-Beverly causes of action are barred by the four-year statute of limitations. .........................................................12

        3.  Plaintiff's fraud cause of action is barred by the three-year statute of limitations. ................................................................15

        4.  Plaintiff's Business & Professions Code section 17200 cause of action is barred by the four-year statute of limitations. ...............16

    B.  Plaintiff's fraud claim is barred under the economic loss doctrine. .....17

        1.  BMW NA did not make any affirmative misrepresentations....19

        2.  Plaintiff has not been exposed to personal damages. ................19

    C.  Plaintiff's UCL claim fails because the relief sought is unavailable...20

V.  CONCLUSION ...................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bhan v. NME Hosps., Inc.*
   929 F.2d 1404 (9th Cir. 1991) ...................................................................9

*Clausen v. M/V NEW CARISSA*
   339 F.3d 1049 (9th Cir. 2003) .................................................................10

*Dep't of Water & Power v. ABB Power T&D Co.*
   902 F. Supp. 1178 (C.D. Cal. 1995) ........................................................16

*Fairbank v. Wunderman Cato Johnson*
   212 F.3d 528 (9th Cir. 2000) .....................................................................9

*FTC v. Stefanchik*
   559 F.3d 924 (9th Cir. 2009) .....................................................................9

*Nada Pac. Corp. v. Power Eng'g & Mfg.*
   73 F. Supp. 3d 1206 (N.D. Cal. 2014)......................................................18

*Rodriguez v. JLG Indus.*
   2012 U.S. Dist. LEXIS 196186 * 2, fn. 9 (C.D. Cal. Aug. 3, 2012) ........9

*Schick v. BMW of North America, LLC*
   2018 U.S. Dist. LEXIS 223690, *9 (C.D. Cal. 2018) ...................12, 13, 14

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
   660 F. Supp. 2d 1163 (C.D. Cal. 2009).....................................................17

*Yi v. BMW of North America, LLC*
   Case 2:17-cv-06467-SVW-SK (C.D. Cal. 2018) ...............................15, 19

*Z Best Body & Paint Shops, Inc.*
   No. CV 16-02398-SVW-KK, 2017 U.S. Dist. LEXIS 174382, at *4 (C.D. Cal. 2017) .....................................................................................................16

## Statutes

Fed. R. Civ. P. 56(a) ...................................................................................9

## **Treatises**

Bus. & Prof. Code § 17208 ........................................................................................... 15

Cal. U. Comm. Code § 2725(1)-(2) ............................................................................. 12

Code Civ. Proc. § 338(d) .............................................................................................. 14

4                         Case No.: 3:18-cv-01391-CAB-AGS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION AND MOTION FOR
SUMMARY JUDGMENT BY DEFENDANT BMW OF NORTH AMERICA, LLC

## I.   INTRODUCTION

In this case, Plaintiff Robert Smothers is suing BMW of North America, LLC (BMW NA) under the Song-Beverly Consumer Warranty Act, the California Business and Professions Code, for unfair competition, and for fraud in relation to his purchase of a new 2012 BMW 550i. His claims, however, are barred by the statute of limitations, for lack of evidence, the economic loss doctrine, and because he is not entitled to any remedy under the Unfair Competition Law.

The facts of this case are straightforward. On December 8, 2011, Plaintiff purchased the Subject Vehicle, and within six months suspected it had a problem with oil consumption, and brought it to a dealership. Plaintiff testified at deposition, under oath, that he suspected the Subject Vehicle had an oil consumption problem in 2012, yet he waited six years after discovering this concern to bring this action on May 24, 2018. All of his claims are, therefore, untimely and barred by the applicable statutes of limitations.

Plaintiff's fraud claim is barred for two additional reasons. *First*, the claim is precluded by the economic loss doctrine because Plaintiff pleaded only economic losses. *Second*, Plaintiff lacks evidence to establish that BMW NA made a misrepresentation or concealed a material fact, that BMW NA intended to defraud him, or that he suffered damages.

Finally, Plaintiff's Unfair Competition Law claim fails because he is not entitled to any remedy under that law because both injunction and monetary relief are not available to him under the circumstances.

The Court should, accordingly, grant summary judgment on all claims in favor of BMW NA, and dismiss the lawsuit with prejudice. In the alternative, the Court should grant partial summary judgment on each claim as appropriate.

///

///

///

## II.    THE MATERIAL FACTS

On December 8, 2011, Plaintiff purchased the Subject Vehicle from BMW of Encinitas.[1] The Subject Vehicle came with a New Vehicle Limited Warranty, which expired on December 8, 2015.[2]

Plaintiff was the primary driver of the Subject Vehicle.[3] Plaintiff testified, under oath, that the only concern he is bringing in this lawsuit is an oil consumption concern, whereby he alleges the Subject Vehicle consumes too much oil.[4]

At deposition, Plaintiff testified that he first suspected there was a problem in May 2012—approximately six years before filing his lawsuit:

> Q.    When after purchasing the vehicle in December of 2011, did you first suspect there was a problem with the vehicle?
>
> A.    I'm not sure, but my best guesstimate is it was on **May 24th, 2012**.
>
> Q.    Okay.
>
> A.    Or in that -- in that vicinity.[5]

Plaintiff repeatedly confirmed that his suspicion there was an oil consumption defect developed in May 2012:

> Q.    So, if I understand you correctly, the first time that you experienced or suspected there was a problem with the vehicle covered by the warranty was in May of 2012; is that correct?
>
> A.    That's correct.[6]
>
> …
>
> Q.    How long do you -- can you estimate for me before May 23rd [2012] did you see that low oil light come on?
>
> A.    I would say it was within a week probably, probably two or three days.

---

[1]  Schuler Decl. ¶¶ 2, 4, 5; Exh. A, at ¶ 4; Exh. C; Exh. B, at 37:3–4, 43:22-45:1, 79:19–22

[2] Schuler Decl. ¶¶ 4, 5; Exh. B, at 110:20–21; Exh. C.

[3] Schuler Decl. ¶ 4, Exh B, at 64:1–4.

[4] Schuler Decl. ¶ 4; Exh. B, at 16:25–17:6, 64:25–65:6, 124:7–14.

[5] Schuler Decl. ¶ 4; Exh. B, at. 79:23 –80:4 (emphasis added).

[6] Schuler Decl. ¶ 4; Exh. B, at 81:8–12.

1   Q.   Did that give rise to any concerns for you, that the low oil had come on
        around this time?

2

3   A.   Well, yes.

    Q.   Why is that?

4

5   A.   Because with -- with cars such as these, BMWs and the Mercedes I
        had owned, they never had to have oil changed between oil services.

6   Q.   So in May –

7   A.   And so when -- when -- when there is a requirement to change --
        change the oil between services that were due, I was concerned, of

8       course.

9   Q.   Did you suspect there was a problem?

10  A.   Well, yes.[7]

11      Plaintiff testified that he believed the oil consumption concern continued after

12  he first presented the Subject Vehicle in 2012, and as such, was not fixed:

13  Q.   So at this time in -- in July of 2014, there were multiple experiences
        that you had had with the low oil light coming on; is that correct?

14

15  A.   I don't know how many, but there had been more than one, yes.

16  Q.   And you suspected that that was a problem with the vehicle; correct?

17  A.   Yes.[8]

18  …

19  Q    The first time it comes on is in May of 2012; correct?

20  A.   Yes.

    Q.   And you brought it to the dealership?

21

22  A.   Yes.

23  Q.   You thought there was a problem with the low oil consumption;
        correct?

24  A.   Correct.

25  Q.   Two years later, in May of 2014, did you still suspect there was a
        problem with low oil consumption issues?

26

27  _____

28  [7] Schuler Decl. ¶ 4; Exh. B, at .86:10-87:2
    [8] Schuler Decl. ¶ 4; Exh. B. at .97:1-8.

A.      My recollection is, yes, I did.[9]

…

Q.      So earlier I understood your testimony to be that you were having problems with the low oil consumption which started in 2012.

A.      Yeah.

Q.      And then it continued in 2013; correct?

A.      Yeah.

Q.      And then it continued in 2014; correct?

A.      Yes, yes.[10]

Plaintiff further testified that the oil consumption concern was the same issue every time, which he experienced throughout 2012-2014:

Q.      Was this the same lamp that you had experienced on the prior two issues in May of 2012 and July of 2014?

A.      Yes.

Q.      And this is the same lamp that you previously testified likely came on at some time in 2013 as well; correct?

A.      Right.[11]

Plaintiff also testified that, in between services, he routinely topped off the oil himself, at BMW NA authorized dealerships, and/or at non-BMW authorized dealerships because of the same oil consumption issue.[12]

Despite forming his suspicion about the oil consumption defect in May of 2012, Plaintiff waited six years until May 24, 2018 to file this action, alleging various violations of the Song-Beverly Consumer Warranty Act, California Civil Code section 1790 *et seq.*, and fraud by omission.[13]

///

---

[9] Schuler Decl. ¶ 4; Exh. B, at .101:1-12.
[10] Schuler Decl., ¶ 4; Exh. B, at 115:21-116:3
[11] Schuler Decl. ¶ 4; Exh. B, at 103:17-24.
[12] Schuler Decl. ¶ 4; Exh. B, at 76:12–19, 82:2–6, 85:15–19:7, 86:15–87:2, 88:24–91:18, 96:18 – 97:20, 100:3–14, 115:6–10, 127:25–128:14.
[13] Schuler Decl. ¶ 2; Exh. A.

8                                                          Case No.: 3:18-cv-01391-CAB-AGS

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the evidence shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, as here, the non-moving party bears the burden of proof, the moving party satisfies its burden merely by "'showing' – that is, pointing out through argument – that there is an absence of evidence to support the [non-moving party's] claim." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). Once the moving party points out an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Of course, even if the non-moving party submits evidence, summary judgment is still appropriate if a reasonable jury could not find in the non-moving party's favor based upon that evidence. *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) [citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)]; *see also Bhan*, 929 F.2d at 1409 ["[The] opponents must do more than simply show that there is some metaphysical doubt as to the material facts"] (internal citations omitted). Relying on conclusory statements, generalizations, or characterizations does not create a genuine issue of material fact defeating summary judgment. *See Rodriguez v. JLG Indus.*, 2012 U.S. Dist. LEXIS 196186 * 2, fn. 9 (C.D. Cal. Aug. 3, 2012) [citing *Seaman v. Pyramid Technologies, Inc.*, 2011 U.S. Dist. LEXIS 130394, *5 (C.D. Cal. Nov. 7, 2011)].

## IV.   ARGUMENT AND AUTHORITIES

### A.   Plaintiff's causes of action are time barred because he suspected facts underlying the elements of his claims—the alleged oil consumption defect—more than four years before filing the action.

In diversity cases, such as this one (*see* ECF. No. 1), state law governs issues such as the elements of a cause of action, measure of damages, and applicable

1  defenses—including a statute of limitations defense. *See Clausen v. M/V NEW*
2  *CARISSA*, 339 F.3d 1049, 1065 (9th Cir. 2003). Here, all of Plaintiff's causes of
3  action are barred because none were filed within the applicable statute of limitations,
4  making summary judgment appropriate.

5            **1.**               **The California "discovery rule."**

6       Under California law, the general rule for defining the accrual of a cause of
7  action sets the date as the time when, under the substantive law, the wrongful act is
8  done, or the wrongful result occurs, and the consequent liability arises. *Norgart v.*
9  *Upjohn Co.,* 21 Cal. 4th 383, 397 (1999). The Supreme Court of California has made
10  clear, however, that "[a]n exception to the general rule for defining the accrual of a
11  cause of action—indeed, the 'most important' one—is the discovery rule." *Id.* The
12  discovery rule has the practical effect of postponing the accrual of a claim "until the
13  plaintiff discovers, or has reason to discover, the cause of action." *Id.*

14       In applying this rule, courts have found that accrual occurs when a plaintiff has
15  a suspicion of one or more of the factual (as opposed to legal) elements of their claim.
16  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *Gutierrez v. Mofid*,
17  39 Cal. 3d 892, 897 (1985) ["[T]he uniform California rule is that a limitations period
18  dependent upon discovery of the cause of action begins to run no later than the time
19  the plaintiff learns, or should have learned the facts essential to his claim."]). Under
20  the discovery rule, suspicion of one or more of the elements of a cause of action will
21  generally trigger the statute of limitations period. *See Fox*, *supra,* 35 Cal. 4th. at p.
22  803 (citing *Norgart*, *supra,* 21 Cal. 4th at p. 398).

23       The Supreme Court of California aptly described the discovery rule as follows:

24       Under *Jolly*, which relies on decisions such as *Gutierrez* and *Sanchez*,
**the plaintiff discovers the cause of action when he at least suspects**
25  **a factual basis, as opposed to a legal theory, for its elements,** even
if he lacks knowledge thereof--when, simply put, he at least suspects ...
26  that someone has done something wrong to him, "wrong" being used,
not in any technical sense, but rather in accordance with its "lay
27  understanding." **He has reason to discover the cause of action when**
**he has reason at least to suspect a factual basis for its elements.** He
28  has reason to suspect when he has notice or information of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION AND MOTION FOR
SUMMARY JUDGMENT BY DEFENDANT BMW OF NORTH AMERICA, LLC

> circumstances to put a reasonable person on *inquiry*; **he need not know the "specific 'facts' necessary to establish" the cause of action**; rather, he may seek to learn such facts through the "process contemplated by pretrial discovery"; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place--he "cannot wait for" them "to find" him and "sit on" his "rights"; he "must go find" them himself if he can and "file suit" if he does.

*Norgart, supra*, 21 Cal. 4th at pp. 397-98. To rely on the discovery rule for delayed accrual of a cause of action, a plaintiff must specifically plead facts showing the time and manner of discovery and the inability to have made an earlier discovery despite reasonable diligence. *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999).

Here, Plaintiff's causes of action are subject to the discovery rule, and are time-barred because the undisputed facts show Plaintiff had suspected the specific facts underlying his causes of action in 2012, but failed to file his lawsuit until 2018—six years later, and well after the statutes of limitation for each claim expired.

### 2. Plaintiff's Song-Beverly causes of action are barred by the four-year statute of limitations.

Plaintiff alleges five causes of action under the Song-Beverly Consumer Warranty Act, California Civil Code sections 1790, *et seq.* A consumer protection law enacted in 1970, Song-Beverly "regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties." *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 213 (1991). A successful Song-Beverly claim has three elements: a plaintiff must show that (1) the vehicle in question had a nonconformity that was covered by the express warranty and substantially impaired its use, safety or value; (2) the vehicle was presented to an authorized representative of the manufacturer to be repaired; and (3) the manufacturer-authorized representative did not repair the nonconformity after a reasonable number of attempts. *Schick v. BMW of North America, LLC*, 2018 U.S.

1  Dist. LEXIS 223690, *9 (C.D. Cal. 2018) [citing *Orgel v. American Isuzu Motors,*

2  *Inc.*, 90 Cal. App. 4th 1094, 1101 (2001) and *Ibrahim v. Ford Motor Co.*, 214 Cal.

3  App. 3d 878, 887-887 (1989)].

4  While the text of Song-Beverly does not contain its own statute of limitations,

5  California courts apply the four-year limitations period for warranties arising under

6  the California Uniform Commercial Code to Song Beverly Act claims. *Schick,* 2018

7  U.S. Dist. LEXIS 223690, *9-10; *Krieger,* 234 Cal. App. 3d at 211. The pertinent

8  provision of the California Commercial Code provides a four-year limitations period

9  and explains when a plaintiff accrues his or her claim:

10  (1) An action for breach of any contract for sale must be commenced
    within four years after the cause of action has accrued…

11

12  (2) A cause of action accrues when the breach occurs, regardless of the
    aggrieved party's lack of knowledge of the breach. A breach of

13  warranty occurs when tender of delivery is made, except that where a
    warranty explicitly extends to future performance of the goods and

14  discovery of the breach must await until the time of such performance
    **the cause of action accrues when the breach is or should have been**

15  **discovered.**

16  Cal. U. Comm. Code § 2725(1)-(2) (emphasis added). The delayed discovery rule

17  applies to Song-Beverly claims. *See Schick,* 2018 U.S. Dist. LEXIS 223690, *9-10.

18  Importantly, courts have concluded that the accrual of a claim and the running of the

19  statute of limitations can take place before the expiration of the express warranty.

20  *Krieger, supra*, 234 Cal. App. 3d at p. 218; *see also Mills v. Forestex Co.*, 198 Cal.

21  App. 4th 625, 642-43 (2003).

22  There is no dispute Plaintiff suspected facts underlying his claim when he

23  presented the Subject Vehicle to a BMW NA authorized repair facility in May 2012

24  alleging the vehicle consumed too much oil. This concern was covered by the

25  warranty, and forms the factual basis of Plaintiff's claims. As evidence, Plaintiff

26  testified that he continued to refill the vehicle when it displayed the low oil light, and

27  thought there was a problem in 2012, 2013, and 2014. The only concern in this

28  lawsuit that Plaintiff has raised is the oil consumption concern. There is no dispute

12                                      Case No.: 3:18-cv-01391-CAB-AGS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION AND MOTION FOR
SUMMARY JUDGMENT BY DEFENDANT BMW OF NORTH AMERICA, LLC

1    Plaintiff presented the Subject Vehicle for the oil consumption concern in May 2012
2    and still thought he had a problem, even after it was presented to the dealer for repair.
3    In fact, Plaintiff was provided documented evidence of these facts in repair orders
4    from the repair facility, which Plaintiff produced in discovery responses in this case.
5    Whether Plaintiff understood the legal significance of those facts is irrelevant.
6    *Norgart*, 21 Cal. 4th at 397-98.

7         BMW NA anticipates that Plaintiff will attempt to circumvent the statute of
8    limitations by arguing he did not discover the Subject Vehicle could be fixed until
9    sometime after 2014, making his claims timely. That argument would misstate the
10   law because, "when a plaintiff … 'has a suspicion of wrongdoing, and therefore an
11   incentive to sue, she must decide whether to file suit or sit on her rights. So long as a
12   suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for
13   the facts to find her.'" *Schick*, 2018 U.S. Dist. LEXIS 223690, *12. Case law is
14   instructive that Plaintiff's claims are barred by the statute of limitations.

15        In *Schick*, a nearly-identical BMW NA case involving the same N63 engine,
16   the plaintiffs filed a lawsuit alleging Song-Beverly causes of action. In that case, the
17   plaintiffs leased a 2012 BMW 650i on February 28, 2012. *Id.* at *5. The undisputed
18   facts showed that, in May 2012, the plaintiffs presented the vehicle to a BMW NA
19   authorized repair facility for the first time. *Id.* Nearly a year later, the plaintiff's
20   presented the vehicle again for warranty concerns. *Id.* The plaintiffs, however, waited
21   until November 17, 2017 to file their lawsuit—more than four years later.

22        In *Schick*, BMW NA moved for summary judgment, arguing the plaintiffs'
23   Song-Beverly claims were barred by the four year statute of limitations because their
24   claims accrued by May 2013 when they presented the vehicle to an authorized
25   dealership for a third time. *Id.* at *9-12. The Central District granted summary
26   judgment, finding that the plaintiffs believed or suspected there was a problem with
27   the windows in 2013, and that based on that suspicion, they had a duty to discover the
28   ///

1  facts underlying their claims. *Id*. at *12. However, the plaintiffs delayed filing for
2  more than four years.

3      In attempt to save their claims, the plaintiffs in *Schick* argued that the statute
4  of limitations should have been tolled until they knew they had a claim under Song-
5  Beverly, which the District Court rejected. The Court made it clear that "[t]he
6  statute of limitations…'is not tolled by belated discovery of legal theories, as
7  distinguished from belated discovery of facts.'" *Id.* at *12.

8      Here, just as in *Schick*, it is uncontroverted that Plaintiff had a suspicion of one
9  or more elements of his claims in May 2012, and at the very latest by 2013. Plaintiff,
10 however, delayed filing this lawsuit until May 24, 2018, nearly six years after
11 allegedly discovering the Subject Vehicle consumes too much oil. As a result,
12 Plaintiff's suit is barred by the four-year statute of limitations applied to the Song-
13 Beverly Consumer Warranty Act.

14      **3.      Plaintiff's fraud cause of action is barred by the three-year
15             statute of limitations.**

16     To succeed on a fraud cause of action, Plaintiff must establish, by admissible
17 evidence, BMW NA made a false representation or concealed a material fact; BMW
18 NA had knowledge of its falsity; BMW NA intended to defraud; justifiable reliance;
19 and resulting damage. *See Conroy v. Regents of University of Cal*., 45 Cal. 4th 1244,
20 1255 (2009). The statute of limitations for fraud is three years. (Code Civ. Proc.
21 § 338(d).) The discovery rule also applies to fraud causes of action and the statute of
22 limitations. *Britton v. Girardi*, 235 Cal. App. 4th 721, 733 (2015).

23     For fraud, the statute begins to run after one has knowledge of facts sufficient
24 to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.
25 *Cleveland v. Internet Specialties West, Inc.*, 171 Cal. App. 4th 24, 31 (2009).
26 Discovery is different from knowledge, so that where a party defrauded has received
27 information of facts which should put that party upon inquiry, and the inquiry if made
28 would disclose the fraud, the party will be charged with a discovery as of the time the

inquiry would have given that party knowledge. *Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1432 (2010). A plaintiff's ignorance of the facts constituting the fraud is insufficient to prevent the accrual of the cause of action. *See Prakashpalan v. Engstrom, Lipscomb and Lack,* 223 Cal. App. 4th 1105, 1123 (2014).

Here, records show that Plaintiff presented the Subject Vehicle an alleged oil-consumption defect within a few months of purchasing the Subject Vehicle in May 2012. In the Complaint, Plaintiff's entire basis for fraud is BMW NA failed to disclose the oil consumption defect. Plaintiff has testified under oath that he discovered the oil consumption defect in May 2012, and at the very latest he thought there was a problem by 2013. However, he waited until 2018 to file his lawsuit. Therefore, his fraud claim is also barred by the statute of limitations.[14]

### 4. Plaintiff's Business & Professions Code section 17200 cause of action is barred by the four-year statute of limitations.

Plaintiff's seventh cause of action for violation of Business & Professions Code section 17200 is also barred as a matter of law by the statute of limitations. "Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued." Bus. & Prof. Code § 17208. Under the last element accrual rule, Plaintiff's claims accrued in 2013, when he believed the oil consumption concern could not be repaired after the visit in May 2012. *See Aryeh v. Canon Business Solutions, Inc.,* 55 Cal. 4th 1185, 1192–97 (2013). Plaintiff's failure to file suit until May 2018 is fatal to his section 17200 cause of action.

///

---

[14] The Central District also reached the same conclusion in *Yi v. BMW of North America, LLC*, Case 2:17-cv-06467-SVW-SK (C.D. Cal. 2018). That case involved nearly identical claims to the present action, but is presently on appeal. It is noted here merely for edification.

**B.    Plaintiff's fraud claim is barred under the economic loss doctrine.**

The economic loss rule precludes recovery in tort where a plaintiff's damages consist solely of alleged economic losses. *See Seely v. White Motor Co.*, 63 Cal. 2d 9, 17-18 (1965). "California courts define economic loss as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property.'" *Dep't of Water & Power v. ABB Power T&D Co.,* 902 F. Supp. 1178, 1186, n.4 (C.D. Cal. 1995). "[A] plaintiff may not recover in tort for an injury caused by defendant's breach of a contractual obligation." *Z Best Body & Paint Shops, Inc.*, No. CV 16-02398-SVW-KK, 2017 U.S. Dist. LEXIS 174382, at *4 (C.D. Cal. 2017). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004).

BMW NA anticipates that Plaintiff will argue his claims are excluded from, or otherwise not subjected to, the economic loss doctrine under *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004). The argument lacks merit and ignores the requirements for exclusion from the doctrine that have been repeatedly upheld, including in Song-Beverly cases where plaintiffs tack on a fraud claim to increase damages, such as here. A review of *Robinson* is instructive.

In *Robinson*, the plaintiff purchased a series of shipments of sprag clutches from the defendant for use in its helicopters. *Robinson*, 34 Cal. 4th at 985-86. The sales contract and FAA safety regulations required the clutches to be manufactured at certain hardness, but unbeknownst to plaintiff, the defendant manufactured the clutches at a different hardness. *Id.* The defendant delivered several shipments of the non-conforming clutches to the plaintiff, *each time accompanied with a written certification claiming that the clutches met the FAA regulations*. *Id.* (emphasis added).

///

The plaintiff discovered the nonconformity and, after a lengthy and expensive recall process, sued the defendant for breach of contract and fraud. *Id.* at 986-87.

The defendant argued that the fraud claim should be barred by the economic loss rule because plaintiff's losses were purely economic. *See Robinson*, 34 Cal. 4th at 988.) The court held that the certifications provided by the defendant to the plaintiff formed the basis for an entirely independent fraud claim and resultant damages. *Id.* at 990-91. The court reasoned that "[b]y issuing false certificates of conformance, [the defendant] unquestionably made affirmative representations that *Robinson* justifiably relied on to its detriment." *Id.* at 990.

The after-the-sale affirmative misrepresentations were not the only reason that the court in *Robinson* refused to apply the economic loss rule. Additionally, the court emphasized that the damages suffered by plaintiff due to the defendant's fraud were distinct from damages suffered due to the breach of contract:

> But for Dana's **affirmative misrepresentations** by supplying the false certificates of conformance, Robinson would not have accepted delivery and used the nonconforming clutches over the course of several years, nor would it have incurred **the cost of investigating the cause of the faulty clutches**.... In addition, Dana's provision of faulty clutches exposed Robinson to **liability for personal damages** if a helicopter crashed **and to disciplinary action by the FAA**.

*Robinson*, 34 Cal. 4th at 991 (emphasis added.) Accordingly, the alleged damages were not purely economic.

Thus, the Supreme Court of California established a very narrow exception to the economic loss rule, allowing fraud claims to survive the economic loss rule only in limited circumstances. *Robinson*, 34 Cal. 4th at 993; *see United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1183 (C.D. Cal. 2009) ["*Robinson Helicopter* creates a 'narrow' and 'limited' exception [to the economic loss rule] for extreme circumstances [and] demonstrates California's strong resistance to further eroding the economic loss rule."].) The two requirements for the exception to apply are as follows: (1) the defendant must have made *affirmative misrepresentations* upon which the plaintiff relied; and (2) the

affirmative misrepresentations must "expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson*, 34 Cal. 4th at 993; *see also Nada Pac. Corp. v. Power Eng'g & Mfg.*, 73 F. Supp. 3d 1206, 1224 (N.D. Cal. 2014) (noting that *Robinson Helicopter* requires affirmative misrepresentations and exposure to liability for personal damages independent of economic loss).

In this case, Plaintiff cannot meet either *Robinson* requirement because BMW NA did not make any affirmative misrepresentations and because he has not suffered personal damages.

### 1.    BMW NA did not make any affirmative misrepresentations.

The *Robinson* case was narrowly decided, and the court's holding was "limited to a defendant's affirmative misrepresentations …." *Id* The express language of the opinion does not cover omissions. Indeed, absent allegations of the additional, intentional, post-sale acts, Plaintiff's fraud claim fails to meet the first requirement of the *Robinson* exception. *See Nada Pac.*, 73 F. Supp. 3d at 1225 ("Nada does not allege that Besser made any affirmative misrepresentations on which it relied.... Without having done so, Nada cannot fit within *Robinson*'s narrow and limited holding.").

Here, in the Complaint, Plaintiff has not alleged that BMW NA made affirmative misrepresentations regarding the Subject Vehicle. Indeed, Plaintiff's fraud claim rests on "omissions" and "concealment." This alone is enough to determine that the fraud claim is barred. This is so because there is no evidence that BMW NA made any affirmative misrepresentations to and Plaintiff has not made that allegation.

### 2.    Plaintiff has not been exposed to personal damages.

Plaintiff's claim fails for the additional reason that the alleged fraud has not exposed him to liability for personal damages independent of his economic loss. *See Nada Pac.*, 73 F. Supp. 3d at p. 1225 ("Nada does not allege ... that it was exposed to

liability for personal damages independent of its economic loss. Without having done so, Nada cannot fit within *Robinson*'s narrow and limited holding."). Thus, Plaintiff cannot satisfy the second prong of the test.

On the subject of damages, Plaintiff merely claims that he suffered actual damages and then seeks punitive damages as well. That the damages he seeks for fraud may be greater than his Song-Beverly claim is irrelevant. The requirement to escape the clutches of the economic loss rule is that the plaintiff is "expose[d] to liability for personal damages independent of the economic loss." *Robinson*, 34 Cal. at 993. "This condition cannot be satisfied merely by pointing out that the fraud claim entitles Plaintiff to greater damages. Such an interpretation would eviscerate the guidelines set out by the *Robinson* court." *Yi v. BMW of North America, LLC* (C.D. Cal. 2018) Case 2:17-cv-06467-SVW-SK, ECF No. 33. Nowhere has Plaintiff alleged, nor can Plaintiff prove, that he became liable for additional, noneconomic damages. The only damages Plaintiff claims are those that arise from the allegedly defective vehicle. Because Plaintiff has not plead and cannot prove any damages "above and beyond a broken contractual promise" (*Robinson*, 34 Cal. 4th at 988), the claim must fail as a matter of law.

**C.      Plaintiff's UCL claim fails because the relief sought is unavailable.**

Plaintiff's Unfair Competition Law ("UCL") claim is brought under California Business & Professions Code section 17200, et seq. In accordance with this claim, Plaintiff seeks restitution and injunctive relief. However, those damages are not available to Plaintiff here.

The Supreme Court of California has advised that the moving party on summary judgment can show the requested form of relief is unavailable in order to defeat a UCL claim. *See Clayworth v. Pfizer*, 49 Cal. 4th 758, 789–90 (2010). The proper inquiry, therefore, is whether Plaintiff may be entitled to injunctive relief, restitution, or disgorgement by BMW NA, which he is not.

///

To prove he is entitled to injunctive relief, Plaintiff must show that BMW NA committed (1) a tort or other wrongful act constituting a cause of action; and (2) irreparable injury (i.e., the wrongful act constitutes an actual or threatened injury to property or personal rights that cannot be compensated by an ordinary damages award). *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989). "In order for an injunction to issue, plaintiff must show that he has or will continue to be damaged, and that there is no remedy at law to make him whole." *In re Marriage of Van Hook*, 147 Cal. App. 3d 970, 985 (1983).

Here, Plaintiff has not and cannot show he has suffered an irreparable injury that cannot be compensated by an ordinary damages award. In fact, his bald allegations show the opposite, that he can be compensated by an ordinary damages award, as he seeks actual monetary damages from BMW NA for his claims. Along these lines, Plaintiff cannot demonstrate that he has no adequate remedy at law. To the contrary, Song-Beverly is the exact remedy at law that is available to consumers who believe a manufacturer has not fulfilled the terms of its warranty. *See, e.g.*, *Philpott v. Superior Court*, 1 Cal. 2d 512 (1934); *Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357 (1994) (statutory right to monetary damages precludes recovery of equitable relief); *Bush v. California Conservation Corp.*, 136 Cal. App. 3d 194, 204 (1982) (holding that sustaining demurrer to cause of action for injunctive relief was proper when plaintiffs had an adequate remedy at law); *Thayer Plymouth Center, Inc. v. Chrysler Motor Corp.*, 255 Cal. App. 2d 300, 306 (1967) (injunction improper where plaintiff had an adequate remedy for damages for breach of contract).

Finally, Plaintiff is not entitled to monetary damages under the UCL because a private litigant does not have a cause of action under the statute. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992). There is no dispute that Plaintiff's "restitution" and "disgorgement" prayers for relief constitute monetary forms of relief. Because Plaintiff cannot prove an irreparable injury or an inadequate remedy at law,

///

and because both injunctive and monetary relief are not available to private litigants under the UCL, Plaintiff's Seventh cause of action must fail as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, BMW NA respectfully requests the Court grant summary judgment on all of Plaintiff's causes of action, or in the alternative, for partial summary judgment on each claim.

Dated:  April 17, 2019                    DINSMORE & SHOHL LLP


                                          By:   _s/ Ian G. Schuler_____
                                                Christopher Celentino
                                                christopher.celentino@dinsmore.com
                                                Ian G. Schuler
                                                ian.schuler@dinsmore.com
                                                Audrey M. Wood
                                                audrey.wood@dinsmore.com

                                                Attorneys for Defendant
                                                BMW OF NORTH AMERICA, LLCt

14854630v7