1  Brian K. Cline (SBN 246747)
   brian@clineapc.com
2  Michael Devlin (State Bar No. 265365)
   michael@clineapc.com
3  **CLINE, APC**
   7855 Ivanhoe Ave, Suite 408
4  La Jolla, CA 90037
   Telephone: (858) 373-9337
5
6  Attorneys for Plaintiff ROBERT SMOTHERS

7
8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10
   ROBERT SMOTHERS,                    Case Nos.:  3:18-cv-01391-CAB-AGS
11
                Plaintiff,             **PLAINTIFFS' OPPOSITION TO**
12                                     **DEFENDANTS' MOTION FOR**
         vs.                           **SUMMARY JUDGMENT**
13
                                       *[Concurrently-filed with Declaration of*
14  BMW OF NORTH AMERICA, LLC; and     *Robert Smothers; Declaration of Brian*
   DOES 1 through 10, inclusive,      *Cline; Request for Judicial Notice]*
15
                Defendants.
16
                                       Date:  May 23, 2019
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF UNDISPUTED AND DISPUTED FACTS........................................ 4

    A.   The Undisputed Facts Show That The Engine Defect Substantially Impaired the Use, Value, and Safety of the Vehicle and Rendered it Unfit for Its Intended Purpose, and That Defendants Failed to Repair the Defect Within a Reasonable Number of Attempts or a Reasonable Amount of Time (But Told Plaintiff There Was Nothing Substantially Wrong) .......................................................................... 4

    B.   The Undisputed Facts Show That Defendant Has Not Established a Complete Limitations Defense .............................................................................................. 5

III.  LEGAL ANALYSIS REGARDING DEFENDANT'S STATUTE OF LIMITATIONS ARGUMENT AS TO THE SONG-BEVERLY AND FRAUD CAUSES OF ACTION.. 6

    A.   The Applicable Legal Standard Demonstrates that Defendant's Motion Must be Denied ................................................................................................................ 6

    B.   Defendants Have Failed to Articulate a Complete Limitations Defense ................ 7

        1.   Plaintiffs Could Not Have Discovered the Breach of Warranty and Song-Beverly Obligations Until Defendants Failed to Repair the Defects Outside of the Warranty..........................................................................................100

        2.   Because Defendants Have Not Fixed the Defect, Plaintiff's Express Warranty Has Not Yet Expired and His Claims In No Way are Time-Barred.............. 12

    C.   Under *American Pipe* Plaintiff's Action is Tolled.................................................. 13

IV.   DEFENDANT'S UNCLEAN HANDS SHOULD JUDICIALLY ESTOP IT FROM MAKING THE ARGUMENT IT MAKES NOW ....................................................... 13

V.    AS PLAINTIFF'S BUSINESS AND PROFESSIONS CODE CAUSE OF ACTION DERIVES FROM DEFENDANT'S BREACH OF ITS SONG-BEVERLY OBLIGATIONS, THE STATUTE OF LIMITATIONS HAS NOT YET EXPIRED AS TO THAT CAUSE OF ACTION .................................................................................. 14

VI.  DEFENDANT MISSAPPLIES THE ECONOMIC LOSS RULE..................................15

VII.  DEFENDANT'S FAILURE TO APPROPRIATELY ADVISE THE COURT AS TO
     THE APPROPRIATE LEGAL STANDARD AND FACTS HERE SUBJECTS IT TO
     SANCTIONS...........................................................................................................16

VIII. CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974 ............................................12

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986) ........................................................6

*Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992)...........................................14

*Cox. v. English-American Underwriters*, 245 F.2d 330, 333 (9th Cir.1957)............................6

*Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345 (1983)..................................................12

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837 (2006) ...............14

*Donlen v Ford Motor Company*, 217 Cal. App .4th 138, 148-49 (2013) .................................11

*Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999)........................................................................16

*Food Safety Net Services v. Eco Safe Systems USA, Inc.,* 209 Cal.App.4th 1118, 1130 (2012)
    ...............................................................................................................................................15

*Henry v. Gill Industries, Inc.* 983 F.2d 943, 950 (9th Cir. 1993)...............................................7

*Hewlett v. Squaw Valley Ski Corp.,* 54 Cal.App.4th 499, 519 (1997)......................................14

*Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 132 (1995) ...............................7

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991).................7,8, 9, 10, 11

*Mills v. Forestex*, 108 Cal. App. 4th 625, 642, 648-49 (2003) .................................................10

*Precision Instrument MFG. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806,
    814 (1945).............................................................................................................................13

*Robinson Helicopter Co., Inc. v. Dana Corp.* 34 Cal.4th 979, 988 (2004) .......................15, 16

*Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-839 (1994)..........................................14

*Scharf v. United States Attorney General,* 597 F.2d 1240, 1243 (9th Cir. 1979).......................7

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1102 (1996).........15

1

**STATUTES**

2   Cal. Civ. Code § 1793.1(a)(2) .................................................................12

3   Cal. Comm. Code § 2725(2)......................................................................7

4   Fed. R. Civ. P. 56(a). ...............................................................................6

5   Fed. R. Civ. P. 56(h). ...............................................................................17

6   Bus. & Prof. Code § 17208 ......................................................................14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

On December 8, 2011, Plaintiff (MR. ROBERT W. SMOTHERS, Colonel, USAF (Ret), Veteran B-17 pilot, WWII and Korea) purchased a brand new 2012 BMW 5-Series (Subject Vehicle or Vehicle) with less than 10 miles from BMW of Encinitas for $74,225.13. In connection with the purchase, Mr. Smothers received an express written warranty and the implied warranty of merchantability and fitness for a particular purpose.

At and before the time of purchase, unbeknownst to Mr. Smothers, defendant BMW OF NORTH AMERICA, LLC ("Defendant") concealed a serious engine defect. Defendant's vehicles equipped with its N63 and N64 engine, including Mr. Smothers', were defectively designed causing excessive engine oil consumption leading to sudden catastrophic engine failure, among other secondary and tertiary engine failures.

Defendants' Motion for Summary Judgment ("Motion") is premised on a blatantly self-serving incorrect interpretation of controlling law.  Plaintiff even informed Defendant of the improper nature of Defendant's argument and rather than withdraw the motion, Defendant's counsel has filed a mere Notice of Errata.  While filing the Notice of Errata does concede and acknowledge that Plaintiff's position is correct it does not appropriately address the issues – this Motion should have never found its way onto the docket to begin with and should have been withdrawn in its entirety.

Defendant's argument egregiously misstates the facts of this case that are in dispute and the applicable legal standards.  Defendant incorrectly informs the Court as to how the Statute of Limitations clock runs under Song-Beverly and conveniently "cherry picks" deposition testimony to its benefit leaving out important facts that cause these issues to fall in Plaintiff's favor.

The law is clear: the statute of limitations as to Song-Beverly claims does not begin to run until the expiration of the warranty period _at the earliest_ (unless a consumer is given a clear, unambiguous indication from the manufacturer prior to the expiration of the warranty that it will

not fix the vehicle or repurchase it). [1]  The reason for that is simple – it is impossible for a consumer to know if the manufacturer will live up to its full legal warranty obligations *until the duration of the warranty has come and gone*!  Defendant's own Motion concedes that the "discovery rule" allows for even later beginning to the statute of limitations.  Even so, Defendant attempts to argue that Statute of Limitations began running here *prior to the expiration of the warranty* in direct contradiction to controlling law.  Defendant points to the fact that Plaintiff suspected *something was wrong with his car* as early as 2012 as its improper grounds for this Motion for Summary Judgment.  That, however, is completely different than suspecting *that Defendant would not permanently fix the Vehicle or fail to live up to its Song-Berverly obligations* which he did not know until after the expiration of the warranty.

The facts are clear:  Plaintiff experienced issues with his vehicle's engine during the warranty period and at all times Defendant informed Plaintiff that there was nothing wrong with his Vehicle.  When he presented the Subject Vehicle for repairs during the warranty period, Defendant informed him that low is normal, the Vehicle will use some oil from time to time, and he merely needed to top off oil; at all times concealing its knowledge of a serious engine defect that was manifesting itself.  Later, once the warranty was expired, Plaintiff ultimately had to pay *over $9,000* out-of-pocket to address this underlying engine defect of which Defendant had at all times told him did not exist.  *Only then*, did he raise the issue with Defendant and learn that Defendant was not living up to its Song-Berverly obligations.

Defendant does not get to have it both ways – it does not get to inform Plaintiff during the warranty period that his problems were not problems, but normal characteristics of the Vehicle, and now that such a position has been demonstrated to be false, inappropriately argue that the statute of limitations has somehow passed *which resulted from Defendant's own*

---

[1] And importantly, "If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed."  Cal. Civ. Code § 1793.1(a)(2).  *See Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) (statute of limitations tolled while reasonable attempts to repair the vehicle are being attempted pursuant to an express warranty providing for repairs during the first three years or 36,000 miles, whichever occurred first and did not run until the plaintiff concluded the vehicle could not be repaired despite a reasonable number of attempts because 'a promise to repair defects that occur during a future period is the very definition of express warranty of future performance ….").

*misstatements to Plaintiff* during the warranty about the existence of an engine defect! Defendant is judicially estopped from taking such a position.  It cannot, on the one hand, inform a consumer that his vehicle's is not broken hoping to run out the clock on both the warranty and the subsequent statute of limitations, and then on the other hand, when the consumer later experiences the serious ramifications of Defendant not addressing the problem state that the consumer *should have known* all along that Defendant was lying about the seriousness of his/her issues!  Plaintiff's clear lack of knowledge was a direct result of Defendant's misstatements made directly to him.  Defendant does not now get to take the benefit in a self-serving manner of such misstatements to the consumer.

To the extent reference to Plaintiff's opposing evidence is necessary, however, Plaintiff has demonstrated the existence of triable issues of material fact.  While Defendant relies in large part from a "cherry picked" out-of-context statement in response to a question posed and phrased by Defendant's counsel during deposition, Plaintiff provides evidence to this Court that he did not know Defendant was not honoring its Song-Beverly obligations until after the expiration of the warranty, in or around March or April 2018, when he had paid $9,000 out-of-pocket and Defendant refused to reimburse him or repurchase his vehicle.  Only then, did Plaintiff know that Defendant had failed to permanently fix the defect and was refusing to live up to its legal obligations.  Defendant improperly argues that he should have known Defendant would not live up to its legal obligations when he began to suspect *there was something wrong with his vehicle.* Such is not the standard under the law as to when the statute of limitations clock begins to run.

As to the economic loss rule to which Defendant points, Defendant again misstates the law.  The economic loss doctrine is only applicable to instances wherein the dispute is limited to matters of contract alone and appropriate contractual remedies.  Here, Plaintiff alleges fraudulent conduct and as a result the economic loss doctrine does not apply as such a cause of action is not one based solely on contract.

The law is on Plaintiff's side with respect to the issues herein.  Likewise, so are the facts.  At the *very least*, triable issues of material fact exist causing Defendant's motion to ultimately fail.

## II.    STATEMENT OF UNDISPUTED AND DISPUTED FACTS

**A.    The Undisputed Facts Show That The Engine Defect Substantially Impaired the Use, Value, and Safety of the Vehicle, and Rendered it Unfit for Its Intended Purpose, and That Defendants Failed to Repair the Defect Within a Reasonable Number of Attempts or a Reasonable Amount of Time (But Told Plaintiff There Was Nothing Substantially Wrong)**

In connection with his December 8, 2011 purchase of the Subject Vehicle, Plaintiff received, among other warranties, an express warranty from BMW that provided 4 years/50,000 miles of bumper-to-bumper coverage, whichever came first.  (Smothers Decl. ¶ 3, Exs. 1-2.)

After the purchase of the Subject Vehicle, recurring engine problems—including the symptom of excessive oil consumption—forced Plaintiff to take the vehicle to Defendant's authorized repair facility on multiple occasions. (Smothers Decl. ¶ 4, Ex. 3.)  During such visits, Defendant's authorized repair facility personnel informed Plaintiff that nothing was wrong with his Vehicle and that he merely need to top his oil off, because the Vehicle was high performance and used oil from time to time.[2]  (Smothers Decl. ¶ 4-5, Ex. 3.)

*Only after* the expiration of the warranty period did Plaintiff begin to understand that there was something substantially wrong with his engine and that Defendant had been lying about the existence of an engine defect of which Defendant did not fix during the warranty period. (Smothers Decl. ¶ 6, Ex. 4.)  Relying on his military experience, Plaintiff began to create logs that document just how often oil was necessary in his engine after the warranty expired.  (*Id.*) He then had to pay over $9,000.00 in out-of-pocket repairs for the engine in the Subject Vehicle. (Smothers Decl. ¶ 7, Ex. 5.)

As a result of the May 2017 visit and having been forced to pay over $9,000.00 out-of-pocket, Plaintiff realized Defendant had been unable to resolve the engine issues during the warranty and that problems were more severe that Defendant had previously acknowledged. (Smothers Decl. ¶ 7-8, Ex. 5.)  As a result, in or around March 2018, Mr. Smothers contacted BMW and requested a repurchase of the Subject Vehicle.  (See Smothers Decl. ¶ 9.)  Rather than

---

[2] Such personnel did this *at the direction of Defendant*.  Defendant has issued a Technical Service Bulletin ("TSB") that indicates that it was aware of serious problems in the N63 engine which was in Plaintiff's vehicle and that its dealership/repair facilities should merely add oil rather than perform a complete documented repair order and send consumers on their way.  (See Cline Decl. ¶ 4, Ex. 6.)

repurchase the vehicle, however, as required under the Song-Beverly Act, BMW's representative advised Mr. Smothers "we are not responsible to reimburse." (*Id.*).

Moreover, Plaintiff became aware that BMW has long since known, through various internal sources, including consumer complaints and its internal investigations, that the Engine Defect Plaintiff experienced is a widespread issue affecting numerous BMW vehicles equipped with the same N63 engine . (*See* Smothers Decl. ¶ 10; Request for Judicial Notice Nos. 1-2.) Notwithstanding its awareness of the defect and its inability to repair it, and despite the fact that Plaintiff afforded BMW a reasonable number of repair attempts to fix the vehicle, Defendants flatly refused to repurchase Plaintiffs' vehicle.

Thus, it is undisputed—or, at best from BMW's perspective, there is a material factual issue—that, although Plaintiff timely presented the Subject Vehicle to BMW for repairs on multiple occasions, BMW was unable to repair the engine defect within a reasonable number of attempts.  Equally, it is undisputed (or there is a material factual dispute) that the problems with the engine have substantially impaired the use, value, and safety of the Subject Vehicle, and render it unfit for the use for which it was purchased.  Finally, it also is undisputed (or there is a material factual dispute) that, as a result of these ongoing problems, in or around March 2018, Plaintiff called BMW and requested that it repurchase the Subject Vehicle, and that BMW refused to do so in April 2018.

**B.** **The Undisputed Facts Show That Defendant Has Not Established a Complete Limitations Defense**

Plaintiff could not have discovered Defendant's breach of Song-Beverly Consumer Warranty Obligations until *after* the following sequence of events: (1) Defendant's failure to repair the engine defect during warranty period which became obvious to Plaintiff *at the expiration of the warranty* which expired in December 2015, (2) the engine failed further after the warranty period and Plaintiff was required to pay out-of-pocket for the repairs beginning in May 2017, (3) prompting Plaintiff to call Defendant to request reimbursement and a repurchase of the vehicle in March 2018, and (4) Defendant's April 2018 refusal to repurchase the vehicle. In other words, Plaintiff was not on notice or could not have discovered Defendant's failure to

live up to its Song-Beverly obligations until it failed to do so!  And when he began researching the widespread nature of the problem, he discovered that BMW personnel had not been honest with him about his problem; establishing the statute of limitations didn't *begin* to run as to Plaintiff's fraud cause of action until around March 2018.

Therefore, even under the most Defendant-friendly interpretation of the statute of limitations, the four-year limitations period had not yet expired on Plaintiff's Song-Beverly claims when he filed his suit in May 2018.[3]  And given that he did not "discover" the fraudulent nature of Defendant's concealment of material facts until around March 2018, the three-year limitations period had not yet expired on Plaintiff's Fraud by Omission claim when he filed suit in May 2018.  May of 2018 is certainly well within four years from the earliest date of December 2015 for Plaintiff's Song-Beverly claims and three years from March 2018 when he discovered Defendant's fraudulent conduct.

## III.  LEGAL ANALYSIS REGARDING DEFENDANT'S STATUTE OF LIMITATIONS ARGUMENT AS TO SONG-BEVERLY AND FRAUD CAUSES OF ACTION

### A.  The Applicable Legal Standard Demonstrates that Defendant's Motion Must be Denied

A party moving for summary judgment bears the high burden of establishing that the action has no merit and that there are no issues of triable material fact.  Fed. R. Civ. P. 56(a).  Such a motion should not be used by a trial court as a substitute for a trial on facts and law; especially when a party has a right to a trial by jury.  *Cox. v. English-American Underwriters*, 245 F.2d 330, 333 (9th Cir.1957).  All a plaintiff need do to successfully oppose a defendant's motion for summary judgment is offer evidence that supports inferences in his or her favor; regardless of how

---

[3] *And See Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) (statute of limitations tolled while reasonable attempts to repair the vehicle are being attempted pursuant to an express warranty providing for repairs during the first three years or 36,000 miles, whichever occurred first and did not run until the plaintiff concluded the vehicle could not be repaired despite a reasonable number of attempts because 'a promise to repair defects that occur during a future period is the very definition of express warranty of future performance …."); *Donlen v Ford Motor Company*, 217 Cal. App .4th 138, 148-49 (2013) (evidence of "non-warranty repair" has a tendency to put the consumer on notice and "establish that the transmission was not fully repaired in conformance with the express warranty" during the warranty's existence.").

persuasive or convincing the trial court actually finds such evidence.  *Scharf v. United States Attorney General,* 597 F.2d 1240, 1243 (9th Cir. 1979).  As stated by the United States Supreme Court in, *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986),  "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

Even if an opposing party fails to timely oppose a motion for summary judgment *at all*, a trial court *must* deny a motion for summary judgment if the moving party's papers do not meet the burden of establishing an absence of triable material issues.  See *Henry v. Gill Industries, Inc.* 983 F.2d 943, 950 (9th Cir. 1993).

Here, Defendant has offered ***absolutely no evidence whatsoever*** as to when it purports Plaintiff knew that Defendant had not fixed the Subject Vehicle within a reasonable number of attempts and/or when Plaintiff knew that Defendant was not going to live up to its Song-Beverly obligations.  Rather, Defendant merely points to a date when Plaintiff *suspected something was wrong with his car*.  That is a completely different fact and not the *material fact* on this issue as to when Plaintiff knew Defendant *had not fixed the Vehicle* and/or *was not going to honor its Song-Beverly obligations*.

**B.      Defendants Have Failed to Articulate a Complete Limitations Defense**

The Song-Beverly Act is governed by a four-year statute of limitations.  *Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 132 (1995).  As made clear by the plain language of California Commercial Code § 27252(2) and the holdings of *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) and its progeny, the statute of limitations for a breach of warranty does not begin to run until the discovery of the breach.  California Commercial Code § 2725(2) states that a cause of action accrues when tender of delivery is made, but "**where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance** the cause of action accrues when the breach is or should have been discovered."  Cal. Comm. Code § 2725(2).  In other words, when a product is purchased with a warranty, the statute of limitations does not begin, generally, until the end of the warranty.  Only then can a buyer know if future performance was fulfilled.

This limitations period has been tolled under various tolling doctrines, including the

discovery doctrine.  The standard for granting summary judgement in a Song-Beverly case was made clear in  *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 216 (1991):

> "A defendant who moves for summary judgment bears the burden of negating the applicability of the discovery exception for accrual of an action on a future warranty. This situation was presented in *Allan v. Massey–Ferguson* (1985) 221 Neb. 528 [378 N.W.2d 664, 667]. In that case, the court held that a genuine issue of fact as to the applicability of the exception precluded summary judgment. In *Allan*, the buyer of a combine sued the manufacturer for breach of warranty and for negligence. The buyer's complaint alleged a warranty that the combine was designed for the purpose of harvesting all types of grain and that it would operate under harvest conditions without damage and without modification. (Id. 378 N.W.2d at p. 665.) The manufacturer's answer specifically denied that it had given any warranty. (Ibid.)  Although the actual sales contract was not in the record on review, the Nebraska Supreme Court found evidence that a warranty had been given. (Id. at p. 667.) The court then applied the rule that the party moving for summary judgment must establish that no material issues of fact exist, and concluded that the manufacturer had failed to negate the buyer's reliance on the discovery exception of Uniform Commercial Code section 2–725, subdivision (2). (Ibid.)"

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 216, 285 Cal. Rptr. 717, 724 (Ct. App. 1991)

Defendant relies almost exclusively on the matter of *Schick v. BMW of North America, LLC.* Not only is Defendant's authority factually dissimilar, it is legally unsupported. In its moving papers, Defendant failed to alert the Court to the fact that *Schick* is on appeal at the Ninth Circuit, thereby exposing this Court to reversible error. Then, only after Plaintiff informed Defendant it violated its Duty of Candor to the Court, Defendant filed a Notice of Errata, identifying the appellate posture, but failing to withdraw the authority from its moving paper, thereby inexplicitly telling the Court Defendant's authority was exposing the Court to reversible error. It is not unfair to say this motion was knowingly defective prior to its filing.

In *Schick*, the vehicle suffered from a defective automatic window component, ***not*** a defective N63 engine as Defendant states in its moving papers—"*When Plaintiffs operated the car's convertible top, the rear windows would repeatedly come up and go back down before Plaintiffs could successfully close them...*" (Case no.: 17cv2512, Doc. 62, p. 5-6; lines 20, 1-2), and, "*Plaintiffs have now voluntarily dismissed their Fraud claim* ["that Defendant knew of and

concealed two material defects in the car's engine: that it consumed an excessive amount of oil…"]. (Case no.: 17cv2512, Doc. 62, p. 8; lines 11-19) The hidden N63 engine defect causes of action were dismissed, because the vehicle in *Schick* never exhibited low oil or any other engine defect symptoms, as is the case with Mr. Smothers' vehicle.

Next, the Plaintiffs in the *Schick* matter unequivocally stated that as of a date certain, they "*stated that after that visit she believed that the problem could not be fixed.*" (Case no.: 17cv2512, Doc. 62, p. 6; footnote 6) This is ***not*** the case here, as Mr. Smothers never testified he believed the various low oil visits were indicative of a greater underlying engine defect that Defendant was unable to fix at that particular visit. Even more striking is, Defendant was telling Mr. Smothers the low oil was "*normal*" for his vehicle and not a problem. (Smothers Decl., ¶¶4-10) There is no reasonable expectation that Mr. Smothers knew or should have known Defendant was unable to repair the engine defect at any particular repair visit, because Defendant was telling Mr. Smothers low oil was normal for his vehicle.

Moreover, the Court in *Schick* commingled the statute of limitations for separate and distinct causes of action. Under *Ehrlich v. BMW of North America*, *LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. Aug. 11, 2010), and *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal.App. 3d 205 (1991) delayed discovery for violations of CC section 1793.2(d) and violations of the express and implied warranties occur at different time periods. The question is when Mr. Smothers knew or should have known: (1) *the manufacturer was not going to fix the product; or* (2) *live up to its Song-Beverly obligations*.  Such dates are the "breach" in question.

For a violation of Civil Code section 1793.2, the operative "breach" of which the consumer had knowledge or should have knowledge is the warrantor's failure to repurchase/replace the consumer good. Here, Mr. Smothers testifies when he knew of Defendant's failure to live up to its obligations under the Song-Beverly Act, "*In March of 2018, I contacted BMW of North America, LLC directly and requested a repurchase of my vehicle…In response to my inquiry, in April of 2018, BMW responded stating, "We are not responsible to reimburse*." (Smothers Decl., ¶9) Alternatively, for a violation of the express and/or implied warranty the operative "breach" is the failure to fix the consumer good. Unlike the *Schick*

1   matter, Mr. Smothers never testified he knew or should have known Defendant was unable to

2   repair. In fact, Mr. Smothers testimony is the Defendant actively concealed and hid the

3   connection between what Defendant classified as "normal oil consumption" and a defective

4   N63 engine. The earliest Mr. Smothers could have known of Defendant's failure to repair the

5   vehicle was after having spent approximately $10,000 of his own money to repair the defective

6   N63 engine. (Smothers Decl., ¶¶7-10) Mr. Smothers' had actual knowledge of Defendant's

7   failure to fix the vehicle on or around March of 2018. (Smothers Decl., ¶¶7-10)

8            1.   <u>Plaintiff Could Not Have Discovered the Breach of Warranty and Song-
                  Beverly Obligations Until he Became Aware that Defendant Failed to
9                 Repair the Defects Outside of the Warranty</u>

10       The import of subdivision (2) and the "future performance" exception was explained in

11   *Krieger*, 234 Cal. App. 3d 205. In *Krieger*, in reversing the trial court's order granting summary

12   judgement, the court found that the exception applied to plaintiff's Song-Beverly Act claims

13   when a dealer promised to repair an automobile within 36 months of its purchase or during the

14   first 36,000 miles of its use. *Id.* at 216-17. The court held that the four-year limitations period

15   of California Uniform Commercial Code section 2725 did not begin to run until the buyer

16   reasonably knew that this promise would not be fulfilled. *Id.* at 218. In other words, when a

17   warranty, such as BMW's 4-year/50,000 mile warranty here, explicitly extends to future

18   performance of the goods, the warranty is tolled until the breach of the promise to conform the

19   vehicle is discovered. *See Mills v. Forestex*, 108 Cal. App. 4th 625, 642, 648-49 (2003) ("[A]

20   cause of action for breach of warranty . . . accrues upon discovery of the breach.").

21       In reaching this conclusion, the *Krieger* court, reversing defendant's motion for

22   summary judgment, considered the policies underlying the Song-Beverly Act:

23
24           If we adopted the position urged by respondent and held that a cause of action for
             breach of express warranty accrues on tender of delivery, before the seller has an
             opportunity to repair any defects, we would undermine the legislative purpose
25           that the parties attempt to resolve any deficiencies in performance before resorting
             to the remedies provided in the Act. In light of our conclusion that actions for
26           breach of warranty under the Act and under the California Uniform Commercial
             Code are governed by the same statute of limitations, the same rule of accrual
27           must apply to both causes of action. Application of California Uniform
             Commercial Code section 2725, subdivision (2) provides this consistency while
28           meeting the policies of the Act.

*Krieger*, 234 Cal. App. 3d at 218-19.

Other courts have adopted the reasoning in *Krieger*.  In *Ehrlich*, the court similarly found that an express warranty extends to future performance of goods, and held that the warranty tolls the statute of limitations and the clock did not begin to run until the plaintiff knew that his or her vehicle was not performing as it should ***and the defendant manufacturer refused to fix it***.  *Ehrlich v. BMW of North America*, *LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. Aug. 11, 2010)  The *Ehrlich* court specifically refuted Defendant's argument here – that knowledge or suspicion of when the vehicle is defective starts the clock; the dispositive question is when the consumer knew or suspected that *the manufacturer was not going to fix the product and/or live up to its Song-Beverly obligations*.  That is the "breach" to be discovered; not merely discovering when the vehicle is problematic.

In *Donlen v Ford Motor Company*, 217 Cal. App .4th 138, 148-49 (2013), the Court held that evidence of later "non-warranty repairs" after the warranty had expired were probative of whether or not the manufacturer fully repaired in conformance with the express warranty" *during the warranty*'s existence.  Oftentimes, a consumer will not know that Defendant did not live up to its warranty and/or Song-Beverly obligations until problems persist after the expiration of the listed warranty terms.  That occurred here.

Here, under the facts of this case as established by the record before the Court, Plaintiff could not have known of the "breach" of the warranty and Song-Beverly obligations, at the earliest, until the defects manifested after the expiration of the warranty which ultimately resulted in a May 2017 repair visit which cost him several thousand dollars out-of-pocket.  *See Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) (statute of limitations tolled while reasonable attempts to repair the vehicle are being attempted pursuant to an express warranty providing for repairs during the first three years or 36,000 miles, whichever occurred first and did not run until the plaintiff concluded the vehicle could not be repaired despite a reasonable number of attempts because 'a promise to repair defects that occur during a future period is the very definition of express warranty of future performance ….");  *Donlen*, 217 Cal.

App .4th at 148-49 (evidence of later "non-warranty repair" has a tendency to put the consumer on notice and "establish that the transmission was not fully repaired in conformance with the express warranty" *during the warranty*'s existence.").

Thus, *at the earliest*, the rules outlined above demonstrate that Plaintiff's Song-Beverly Act claims did not have the statute of limitations begin to run until he became aware *Defendant had not permanently fixed his vehicle* which he has demonstrated occurred as problems continued after the warranty and in May 2017 when he had to begin paying several thousand dollars to address the ongoing engine defect. Pursuant to *Ehrlich*, *supra*., the "breach" he discovered was not even remotely as early as 2012 as Defendant disengenuously argues.

        2.    <u>Because Defendant Has Not Fixed the Defect, Plaintiff's Express Warranty Has Not Yet Expired and His Claims In No Way are Time-Barred</u>

"If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed." Cal. Civ. Code § 1793.1(a)(2). Here, Defendant do not dispute that Plaintiff took the Subject Vehicle to the dealership for engine concerns during the warranty period. Nor does Defendant dispute the existence of Plaintiff's later out-of-pocket repair visits which demonstrate the Defect had not been fixed appropriately during the warranty. Accordingly, under section 1793.1(a)(2), Plaintiff's warranty had not yet expired in December 2015 when it otherwise would have and the applicable limitations period has not in anyway expired.

**C.    Under *American Pipe* Plaintiff's Action is Tolled**

*American Pipe* tolling was first recognized by the Court over forty years ago in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), where the Court held that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. In *American Pipe*, the Court further ruled that, where class action status has been denied, members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character. In 1983, the Court clarified in *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345 (1983) that *American Pipe's* tolling rule is not dependent on intervening in or joining an existing suit; it applies as well to absent class members who, after denial of class certification, prefer to bring an individual suit once the

economies of a class action are no longer available.

Here, Mr. Smothers' Complaint alleges the very defects and fraudulent activity at issue in the *Bang v. BMW of North America LLC*, class action. Defendant, once again, misleads the Court by omitting reference to the *Bang* class action and its legal effect tolling any statute of limitations that could apply.  The fact is, there exists a class-action related to the N63 engine covering Plaintiff's vehicle and Plaintiff has opted out of such action.  (*See* Cline Decl. ¶ 7; Request for Judicial Notice Nos. 1-2.)

## IV.   DEFENDANT'S UNCLEAN HANDS SHOULD JUDICIALLY ESTOP IT FROM MAKING THE ARGUMENT IT MAKES NOW

The unclean hands doctrine " is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith." *Precision Instrument MFG. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945). Such a doctrine allows the Court to use its discretion in "refusing to aid an unclean litigant." *Id.* at 815.  "One's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient." *Id.*

Here, Plaintiff establishes that he was repeatedly informed by BMW service technicians that the symptoms of the defect he was experiencing in the Subject Vehicle was not a problem. Through Defendant's misconduct, Plaintiff was not able to understand the severity of the issues in the Subject Vehicle until much later.  Now, Defendant seeks to obtain the benefit of is prior misconduct by asserting that Plaintiff should have known sooner and seeks to dismiss Plaintiff's entire case as a result.  Had Defendant through its authorized repair facilities been honest with Plaintiff all along perhaps he would have known of Defendant's failure to live up to its warranty and Song-Beverly obligations sooner.  But because Defendant committed such misconduct it should now be estopped under the Court's discretionary power of making the argument it now makes.

///

**V.     AS PLAINTIFF'S BUSINESS AND PROFESSIONS CODE CAUSE OF ACTION DERIVES FROM DEFENDANT'S BREACH OF ITS SONG-BEVERLY OBLIGATIONS, THE STATUE OF LIMITATIONS HAS NOT YET EXPIRED AS TO THAT CAUSE OF ACTION**

"Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action has accrued." Bus. & Prof. Code § 17208.

California courts have repeatedly held that all that is necessary to establish a violation of B&P § 17200 *et seq.*, is to show that the defendant is a business engaged in acts or practices that are unlawful, fraudulent, or unfair.  Thus, "there are three varieties of unfair competition: practices which are unlawful, unfair, or fraudulent." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837 (2006).  The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made.  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-839 (1994). It is not necessary that the predicate law provide for private civil enforcement.  "Unfair," as used in the statute, simply means any practice whose harm to the victim outweighs its benefits.[4] "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

B&P § 17200 "is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.  Thus, California courts have consistently interpreted the language of section 17200 broadly." *Hewlett v. Squaw Valley Ski Corp.,* 54 Cal.App.4th 499, 519 (1997).  "The statute imposes strict liability.  It is not

---

[4] The "unfair" prong of section 17200 intentionally provides courts with broad discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times-Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980). An unlawful business practice or act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984). "[T]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal. App. 4 th 1093, 1104 (1996).

necessary to show that the defendant intended to injure anyone." *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1102 (1996).

Here, Plaintiff's FAC alleges the "unlawful" prong of B&P § 17200.  Plaintiff clearly identifies and incorporates by reference all allegations listed in other causes of action and specifically points to violations of the Song-Beverly Act, the Mag-Moss Act, and common law fraud.  (Complaint at ¶ 46).

Accordingly, Plaintiff's B&P § 17200 cause of action's statute of limitations clock begins to run at the same time of Defendant's alleged breach of its Song-Beverly Consumer Warranty Act obligations occurred – at the time Defendant breached its legal obligation to fix the vehicle within a reasonable number of attempts and/or repurchase the good.  Here, Plaintiff requested Defendant repurchase the Subject Vehicle in March of 2018.  Defendant refused in April 2018.  The suit was filed a mere month after Defendant allegedly breached its Song-Beverly obligation.  A suit being filed merely a month later is well within the four-year period!

## VI.   DEFENDANT MISSAPPLIES THE ECONOMIC LOSS RULE

The economic loss rule provides: where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic loss.  *Robinson Helicopter Co., Inc. v. Dana Corp.* 34 Cal.4th 979, 988 (2004).  Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other.  *Food Safety Net Services v. Eco Safe Systems USA, Inc.,* 209 Cal.App.4th 1118, 1130 (2012) (citing *Robinson Helicopter, supra,* 34 Cal.4th at 988.) "[E]onomic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits – without any claim of personal injury or damages to other property."  *Id.* At 1130, fn. 4 (citing *Robinson Helicopter, supra,* 34 Cal.4th at 988.)

In *Robinson Helicopter, supra,* 34 Cal.4th 979, the California Supreme Court carved out a circumstance where "a party alleging fraud or deceit in connection with a contract" can recover in tort if he can "establish tortious conduct independent of a breach of the contract itself, that is, violation of 'some independent duty arising from tort law.'" *Food Safety, supra,* 209 Cal.App.4th at 1130 (citing *Robinson, supra,* 34 Cal.4th at 990.)  This ruling was with respect to a defendant's

misrepresentations on which a plaintiff relied and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss. *Robinson, supra,* 34 Cal.4th at 993. This ruling *was not preclusive*, as the Court specifically cited to several other instances where tort damages were permitted in contract cases. *Id.* at 989-990.

**Defendant openly concedes that the economic loss rule does not apply when there has been tortious conduct independent of the contract and/or there has been an allegation of personal injury**. Defendant concedes that the economic loss rule does not apply if Plaintiff alleges misstatements that led to exposure to personal injury; yet at the same time Defendant is simply incorrect that Plaintiff does not actually allege it. The Complaint clearly identifies the misstatements and resulting safety risk and harm Plaintiff may suffer as a result of Defendant's tortious conduct. Plaintiff points to how Defendant's technicians told him that symptoms he was experiencing was not a problem. Specifically, Plaintiff has plead that the "Defect is  a safety concern because it prevents the engine from maintaining the proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted," and such defect "unreasonably dangerous because it can cause engine failure while the Vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the Plaintiff, passengers and others who share the road with them to serious risk of accidents and injury." (*See,* Complaint ¶32.)

Plaintiff has sufficiently plead fraud by omission to avoid the economic loss rule. *See Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999) (citing *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1238-1239 (1991). Plaintiff has expressly stated that he has been exposed to liability for damages independent of the economic loss due to Defendant's tortious conduct.

## VII.   DEFENDANT'S FAILURE TO APPROPRIATELY ADVISE THE COURT AS TO THE APPROPRIATE LEGAL STANDARD AND FACTS HERE SUBJECTS IT TO SANCTIONS

Defendant's entire Motion for Summary Judgment is premised on a self-serving and wholly incorrect argument as to the legal standard and facts as to when the statute of limitations

would run here.  Indeed, Plaintiff's counsel informed Defendant that its Motion, the law to which it cited, and facts in support were inappropriate.  See Cline Decl. ¶ 5, Ex. 7.  Rather than remove the Motion entirely, Defendant conceded Plaintiff's point by merely filing a Notice of Errata.  (See Decl of Cline ¶ 6; ECF Doc. 19)

However, by proceeding forward with the Motion even after having been advised by Plaintiff that it was not appropriate under the law and facts, Defendant has committed sanctionable conduct.  "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the Court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions."  Fed. R. Civ. P. 56(h).

## VIII.  CONCLUSION

For these reasons, the Court should deny Defendants' Motion in its entirety.


Dated:  May 9, 2019                                      Respectfully submitted,
                                                         CLINE, APC


                                                   By: _____
                                                         MICHAEL DEVLIN
                                                         Attorneys for Plaintiff